COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Bumgardner and Clements
Argued at Richmond, Virginia


JOHN PAUL PATTERSON
                                              OPINION BY
v.    Record No. 2446-01-2        JUDGE JEAN HARRISON CLEMENTS
                                          JANUARY 28, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF HANOVER COUNTY
                    John Richard Alderman, Judge

            Frank K. Friedman (Daniel S. Brown; Woods,
            Rogers & Hazlegrove, P.L.C., on briefs), for
            appellant.

            Margaret W. Reed, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     John Paul Patterson appeals a decision of the trial court

denying his request for termination of the period of suspension

of his sentence.  On appeal, he contends the trial court erred in

concluding it lacked jurisdiction under Rule 1:1 to modify his

sentence, as requested, more than twenty-one days after entry of

the sentencing order.  Finding no error, we affirm the trial

court's judgment.

                         I.  BACKGROUND

     The relevant facts and procedural posture of this case are

not in dispute.  Patterson pled guilty in the court below to

indictments for possession of cocaine and possession of psilocyn

(illegal mushrooms).  Both offenses occurred on February 20,

1990, when Patterson was nineteen years old and a freshman at

Randolph-Macon College.  On May 21, 1990, the trial court accepted Patterson's pleas of guilty and convicted him on both charges.

By sentencing order entered July 16, 1990, the trial court dismissed the possession of cocaine conviction and sentenced Patterson, who had no prior criminal history, to ten years in the penitentiary on the possession of psilocyn conviction.  The trial court suspended that sentence for twenty years on the condition that Patterson "keep the peace, be of good behavior, violate no laws of the Commonwealth or any other jurisdiction, and that he receive drug testing under the direction of the Probation Officer of the court under whose supervision he is placed."

On May 13, 1991, upon receipt of a letter from Patterson's probation officer representing that Patterson was "a suitable person to be released from further supervision," the trial court entered an order releasing Patterson from further supervision by his probation officer.

On March 9, 2001, Patterson petitioned the trial court to vacate its July 16, 1990 sentencing order pursuant to Code § 19.2-303.  Seeking termination of "the period of suspension of [his] sentence," Patterson represented that the twenty-year period of suspension hindered him in obtaining "gainful employment commensurate with his education and training" and that it would prevent him from having his civil rights restored until he was forty-six years old.

At the hearing on Patterson's petition on May 16, 2001, the Commonwealth conceded Patterson had to that point complied with the terms and conditions of the suspension of his sentence.  It

argued, however, that, pursuant to the proscriptions of Rule 1:1, the trial court did not have jurisdiction to modify Patterson's sentence because Patterson's petition was filed more than twenty-one days after entry of the sentencing order. Patterson maintained the trial court had jurisdiction to modify his sentence under Code § 19.2-303 because he was never transferred to the Department of Corrections. He further maintained, in the alternative, that the trial court had jurisdiction to modify his sentence because the twenty-year suspension was so unreasonable in relation to the gravity of the offense that the sentence was void or unlawful. Citing Rule 1:1, the trial court concluded it did not have jurisdiction to make the requested modification and denied Patterson's petition accordingly.

This appeal followed.

## II. ANALYSIS

Under Rule 1:1, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Thus, once the twenty-one-day time period following the entry of a final sentencing order has run without modification, vacation, or suspension of that order, the trial court loses jurisdiction to disturb the order, unless an exception to Rule 1:1 applies. See In Re: Dept. of Corrections, 222 Va. 454, 463-64, 281 S.E.2d 857, 862 (1981).

Here, the trial court entered its sentencing order, a final order, on July 16, 1990. The trial court did not modify, vacate, or suspend that order within twenty-one days of its entry.

Therefore, pursuant to the provisions of Rule 1:1, the trial court retained jurisdiction over Patterson's sentence only until August 6, 1990.  Patterson did not petition the trial court to vacate the sentencing order until March 9, 2001.

Patterson, however, points on appeal, as he did below, to two exceptions to Rule 1:1 that he argues authorized the trial court to modify his sentence although more than twenty-one days had passed since the entry of the trial court's 1990 sentencing order.  The first, Patterson asserts, is Code § 19.2-303 and the second is the principle that the "trial court may correct a void or unlawful sentence at any time."  Powell v. Commonwealth, 182 Va. 327, 340, 28 S.E.2d 687, 692 (1944).  We will address the applicability of each asserted exception separately.

## A.  Code § 19.2-303

Code § 19.2-303 provides an exception to Rule 1:1 under certain limited circumstances, as follows:

> If a person has been sentenced for a felony to the Department of Corrections but has not actually been transferred to a receiving unit of the Department, the court which heard the case, if it appears compatible with the public interest and there are circumstances in mitigation of the offense, may, at any time before the person is transferred to the Department, suspend or otherwise modify the unserved portion of such a sentence.  The court may place the person on probation for such time as the court shall determine.

See Russnak v. Commonwealth, 10 Va. App. 317, 324, 392 S.E.2d 491, 495 (1990) ("An exception to [Rule 1:1] is found in Code  § 19.2-303 . . . .").

Patterson contends the exception to Rule 1:1 offered in Code § 19.2-303 applies to him because he had "been sentenced for a

- 4 -

felony to the Department of Corrections but ha[d] not actually been transferred" to the Department of Corrections when he petitioned the trial court to vacate its July 16, 1990 sentencing order.  Thus, he argues, the trial court retained jurisdiction to terminate the remaining, "unserved portion" of the period of suspension of his sentence.

The Commonwealth concedes that Patterson was sentenced for a felony to the Department of Corrections and that he had not been transferred to the Department when he petitioned the trial court to vacate its July 16, 1990 sentencing order.  The Commonwealth contends, however, that Code § 19.2-303 does not apply to Patterson because the entire period of incarceration in the penitentiary imposed on him had been suspended and he was not, therefore, "going to be transferred to the Department of Corrections at any point in time after sentencing."  Code § 19.2-303, the Commonwealth argues, was intended to apply to only those convicted felons who are "temporarily in a local correctional facility already serving their sentence awaiting transfer to the Department of Corrections."  The legislature's use in the statute of the words "before the person is transferred to the Department" and "unserved portion of . . . a sentence" mandates this interpretation, the Commonwealth maintains.

The dispositive question now before us is whether the trial court retained jurisdiction under Code § 19.2-303 to shorten the period of suspension of Patterson's sentence in consideration of "circumstances in mitigation of the offense" more than twenty-one days following the entry of the final sentencing order.

In resolving that question, we must look to the language of the pertinent part of the statute to determine the General Assembly's intent.  See HCA Health Servs. of Virginia, Inc. v. Levin, 260 Va. 215, 220, 530 S.E.2d 417, 420 (2000) ("Courts must give effect to legislative intent, which must be gathered from the words used, unless a literal construction would involve a manifest absurdity.").  As "[t]he purposes of Code § 19.2-303 are rehabilitative in nature," Esparza v. Commonwealth, 29 Va. App. 600, 607, 513 S.E.2d 885, 888 (1999), the statute should be construed liberally.  See Wright v. Commonwealth, 32 Va. App. 148, 151, 526 S.E.2d 784, 786 (2000) (stating that statutes should be liberally construed in keeping with their rehabilitative purpose); see also Dyke v. Commonwealth, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952) (noting that courts should liberally construe Code § 53-272, Code § 19.2-303's predecessor, in order to "afford to trial courts a valuable means of bringing about the rehabilitation of offenders against the criminal laws").  This does not mean, however, that Patterson is entitled to an interpretation of Code § 19.2-303 that is inconsistent with the statute's plain language.  See Cartwright v. Commonwealth, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982) (noting that a statute may be interpreted in accord with its purpose only to the extent that such purpose "'may be accomplished without doing harm to [the statute's] language'" (quoting Gough v. Shaner, Adm'r, 197 Va. 572, 575, 90 S.E.2d 171, 174 (1955))).  "The manifest intention of the legislature, clearly disclosed by its language, must be applied." Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944).

By its express terms, Code § 19.2-303 permits the trial court, in cases where the defendant "has been sentenced for a felony to the Department of Corrections but has not actually been transferred to . . . the Department," to retain jurisdiction beyond the twenty-one-day limit of Rule 1:1 to "suspend or otherwise modify the unserved portion of such a sentence." Patterson argues that, because a portion of his sentence—specifically, the balance of the period of suspension of sentence—remained to be served when he petitioned the court to vacate its sentencing order, the trial court retained jurisdiction to "otherwise modify" that "unserved portion" of his sentence. We disagree.

At issue in this case is whether the term "such a sentence," which is not specifically defined in the statute, was intended by the legislature to refer strictly to the period of incarceration in the penitentiary previously imposed by the trial court or, as Patterson contends, to also encompass the period of suspension of sentence previously fixed by the trial court. "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). "An undefined term must be given its ordinary meaning, considered in the context in which the term is used. The context of the term includes the other language used in the particular statute . . . at issue." Murphy v. Norfolk Cmty. Servs. Bd., 260 Va. 334, 339-40, 533 S.E.2d 922, 925 (2000) (citations omitted).

Here, the syntactic context of the term "such a sentence" is straightforward and determinative of the issue at hand. The antecedent of "such a sentence" is that sentence imposed by the trial court when a convicted felon is "sentenced . . . to the Department of Corrections." Read plainly, the words "sentenced . . . to the Department of Corrections" clearly contemplate the imposition of a period of incarceration in the penitentiary on the felon. As written, however, they do not appear to contemplate, either explicitly or connotatively, the suspension of the imposed incarceration.

Moreover, in the phrase "suspend or otherwise modify the unserved portion of such a sentence," the words "suspend" and "otherwise modify" are used as parallel terms describing the alternative actions the trial court may take with regard to "the unserved portion of such a sentence." Grammatically, they both are intended to refer and, hence, apply to the same "unserved portion." Clearly, a trial court can either "suspend" or "otherwise modify" the unserved portion of an imposed period of incarceration. It is not logically possible, however, to "suspend" a portion of a sentence that has already been suspended. Thus, having been used as parallel terms, the words "suspend or otherwise modify" cannot reasonably be interpreted as applying to the period of suspension of sentence. See Harris v. Commonwealth, 142 Va. 620, 624, 128 S.E. 578, 579 (1925) (stating that "proper grammatical effect will [generally] be given to the arrangement of words in a sentence of a statute"); Frere v. Commonwealth, 19 Va. App. 460, 464, 452 S.E.2d 682, 685 (1995)

(noting that a presumption exists that "the legislature understood the basic rules of grammar" when drafting a statute).

The Supreme Court's holding in Robertson v. Supervisor of Wise Correctional Unit, 248 Va. 232, 445 S.E.2d 116 (1994), relied upon by both parties, does not require a different result. Robertson involved two simultaneously imposed penitentiary sentences, one that was suspended on condition of good behavior for a period of six years and a second that was suspended on condition that Robertson serve twelve months in the local jail and be of good behavior for two years. Id. at 233-34, 445 S.E.2d at 116-17. The original order was silent regarding whether the sentences were to run consecutively or concurrently, making the sentences consecutive by operation of law. Id. at 234, 235, 445 S.E.2d at 117, 118. While Robertson remained in the local jail pursuant to the original sentencing order but more than twenty-one days following its entry, the trial court entered a second order in which it provided that the sentences were to run concurrently. Id. at 234, 445 S.E.2d at 117. Robertson was released from jail after serving his sentence. Id.

When Robertson was convicted for a third offense while still on probation for the first two offenses, the trial court revoked the sentences previously suspended and entered an order purporting to make the sentences for the first two offenses

consecutive rather than concurrent.  Id.  Robertson challenged the court's authority to enter the third order.

The Supreme Court, citing Code § 19.2-303, noted that, "[a]t the time the second order was entered, Robertson 'had not been transferred to the Department [of Corrections] and the trial judge had authority to 'suspend or otherwise modify the unserved portion' of the sentences imposed by the first order." Id. at 235, 445 S.E.2d at 117 (quoting Code § 19.2-303).  It noted further that, "[w]hile the trial court still retained power under Code § 19.2-306 to revoke the suspension of those sentences and the power under Code § 19.2-303 to modify the sentences in consideration of 'circumstances in mitigation of the offense,' the court had no authority to lengthen the period of incarceration [by ordering that the sentences would run consecutively rather than concurrently]."  Id. at 236, 445 S.E.2d at 118.

Thus, in Robertson, the Supreme Court held the trial court retained jurisdiction, pursuant to Code § 19.2-303, to make concurrent Robertson's simultaneously imposed consecutive sentences where one of those sentences involved active jail time under which Robertson remained incarcerated at the time of entry of the order.  It also held the court lacked authority to lengthen the period of incarceration.  It did not hold the trial court retained jurisdiction to shorten or eliminate the remaining suspended portion of the sentence after Robertson had

- 10 -

finished serving the active period of incarceration.
Consequently, <u>Robertson</u> is not controlling.

We conclude, therefore, that the term "such a sentence," as used in Code § 19.2-303, was intended by the legislature to refer strictly to the period of incarceration in the penitentiary imposed on a convicted felon without regard to the period of suspension of that incarceration.  Accordingly, we hold that, while Code § 19.2-303 permits the trial court to retain jurisdiction beyond the twenty-one-day limit of Rule 1:1 to shorten the previously imposed period of incarceration while the defendant remains incarcerated "but has not actually been transferred to a receiving unit of the Department [of Corrections]," it does not authorize the court to retain jurisdiction to modify the previously imposed period of suspension of sentence.

Under this construction, the trial court correctly ruled it did not have jurisdiction under Code § 19.2-303 to terminate the period of suspension of Patterson's sentence more than twenty-one days after entry of the court's July 16, 1990 final sentencing order.

### B.  Void or Unlawful Sentence

Patterson also argues on appeal, as he did before the trial court, that the trial court had jurisdiction to terminate the period of suspension of his sentence because the twenty-year suspension of his sentence was so unreasonable, in relation to the gravity of the offense of which he was convicted, as to

render the sentence void or unlawful. The trial court, in concluding it lacked jurisdiction to make the requested change, rejected Patterson's argument.

Code § 19.2-303.1 provides that the trial court, in suspending "the imposition or execution of a sentence, . . . may fix the period of suspension for a reasonable time, having due regard to the gravity of the offense, without regard to the maximum period for which the defendant might have been sentenced." The statute grants the trial court broad discretion in fixing the period of suspension of sentence for the remedial purpose of rehabilitating criminals. See Wright, 32 Va. App. at 151, 526 S.E.2d at 786. Indeed, the only statutory limitation placed on the trial court's discretion in fixing the period of suspension of sentence is that the duration of the suspension period must be "reasonable . . . , having due regard to the gravity of the offense." Code § 19.2-303.1. Thus, while "the court's authority to suspend execution is not absolute," the sentencing court "must consider that the facts surrounding a particular offense may well authorize, even require, a longer suspension than would be reasonable under less egregious circumstances." Simmers v. Commonwealth, 11 Va. App. 375, 378, 398 S.E.2d 693, 694 (1990).

In this case, Patterson pled guilty to charges of possession of cocaine and possession of psilocyn. At the time of the offenses, Patterson was nineteen years old and had no prior criminal history. However, information presented at the sentencing hearing showed Patterson had compiled an extensive

history of illegal drug usage prior to his conviction and sentencing for possession of psilocyn.

Patterson began using alcohol at the age of sixteen and frequently used marijuana and hallucinogenic mushrooms for several years prior to his conviction. He also used LSD on numerous occasions and experimented with cocaine, nitrous oxide, and valium. Several months before his arrest and conviction, Patterson was hospitalized for repeated hallucinatory flashbacks, including visions of the crucifixion of Christ and voices telling him to kill himself. Patterson rejected the recommended substance abuse treatment offered by the hospital, saying he knew more about the subject than those involved.

At sentencing, the prosecutor, after reviewing the instant offense and Patterson's past drug usage, advised the trial court as follows:

> [Patterson's attorney] and I have talked at great length, Your Honor. I don't understand candidly what the answer is for Mr. Patterson. I think the answer will have to come from Mr. Patterson. . . .
> The Commonwealth would recommend this morning he be released on time served, be given a ten year suspended penitentiary sentence, on supervised probation. Such sentence should run for a period of twenty years . . . . Mr. Patterson is old enough, though a young man, to accept the consequences of his conduct. He has not done that in the past. He is going to have to do it . . . henceforth.

Patterson's attorney responded as follows:

> Your Honor, if I may briefly, of course, <u>we would concur in the Commonwealth's recommendation</u>. . . .
> Your Honor, I concur with [the prosecutor's] observations. Quite candidly, on behalf of my client, I would suggest that it was not until his arrest and prosecution

> on these most serious charges that will
> indeed follow him for the rest of his days
> that he, so to speak, got the point. . . .
> [H]e is of the personal opinion that it's up
> to the individual to make a decision
> internally, if you will, whether or not to
> get control of the situation and maintain
> control . . . .

(Emphasis added.)

In light of these statements and Patterson's extensive drug usage prior to his conviction, it is clear that the twenty-year period of suspension of Patterson's sentence was intended to benefit both the Commonwealth and Patterson. The Commonwealth received the benefit of a compelling deterrence that would serve to motivate Patterson to reform his conduct and be of good behavior for a considerable period of time. Patterson gained his freedom and the opportunity to "get control of the situation and maintain control" for a considerable period of time.

We cannot say, therefore, upon consideration of the facts and circumstances surrounding the offense, that the trial court abused its discretionary authority in fixing, for the remedial purpose of rehabilitating Patterson, the period of suspension of Patterson's sentence at twenty years. We conclude, therefore that the twenty-year suspension of Patterson's sentence was reasonable under Code § 19.2-303.1 and that the trial court did not err in finding it so.

Furthermore, because the trial court at sentencing "had jurisdiction over the subject matter and the parties[,] . . . the court's judgment was not void." Simmers, 11 Va. App. at 379, 398 S.E.2d at 695. "Since the judgment of the trial court was not

- 14 -

void, [Patterson] may not sustain a collateral attack at this time."  Id.

For these reasons, we hold the trial court properly ruled it lacked jurisdiction under Rule 1:1 to modify Patterson's sentence, as requested, more than twenty-one days after entry of the sentencing order.  Accordingly, we affirm the judgment of the trial court.

Affirmed.